STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**October 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **K.B., E.B., and L.B.**

**No. 18-0401** (Mercer County 15-JA-057-WS, 15-JA-058-WS, and 15-JA-059-WS)


# MEMORANDUM DECISION

Petitioner Father A.B., by counsel David B. Kelley, appeals the Circuit Court of Mercer County's April 3, 2018, order terminating his parental rights to K.B., E.B., and L.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Catherine Bond Wallace, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion to require L.B. to testify, in denying his motion for an improvement period, and subsequently terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2015, the DHHR filed a petition alleging that petitioner and the mother engaged in domestic violence in front of the children and that L.B., age seven, was injured as a result. Further, the DHHR alleged that petitioner and the mother participated in an attempted robbery while L.B. was with them. According to the DHHR, petitioner and the mother were charged with attempted first-degree robbery as a result of their conduct.

In June of 2015, the circuit court held a status hearing and ordered a parental fitness evaluation. Later, the parental fitness evaluation was returned and petitioner's prognosis for improvement was determined to be extremely poor to nonexistent. The evaluation found that petitioner exposed the children to drug use, domestic violence, the perpetration of violent crimes,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

and long-term neglect. Yet, petitioner did not accept that his actions had a significant negative effect on the children. Further, the evaluation noted that petitioner's test scores suggested a significant danger for abusive behaviors. The DHHR moved to introduce L.B.'s testimony through a forensic interviewer. Petitioner responded with a motion to require the child's testimony. Ultimately, the circuit court denied petitioner's motion and ordered that L.B. would not be required to testify in person.

The circuit court held the adjudicatory hearing in February of 2016, and petitioner renewed his motion for L.B. to testify in person. The circuit court again denied petitioner's motion. The DHHR presented testimony from a Mercer County police officer, L.B.'s forensic interviewer, and the mother. Petitioner also testified and indicated that he intended to plead guilty to his criminal charges. During their testimony, both parents admitted that L.B. was in the car during the attempted robbery. Ultimately, the circuit court adjudicated petitioner as an abusing parent. Petitioner moved for a post-adjudicatory improvement period and the DHHR objected. The circuit court took the motion under advisement and scheduled a dispositional hearing.

In August of 2016, the circuit court held a dispositional hearing and heard evidence from the DHHR and petitioner. According to the DHHR, petitioner was sentenced to a "not less than ten years" of incarceration as a result of his guilty plea. As such, petitioner was unable to participate in an improvement period and would be unable to participate in the near future. Petitioner testified that his parole date was October of 2017. Petitioner also admitted to prior CPS involvement in which he received services and complied with those services. The circuit court reasoned that petitioner would not be released from incarceration in a reasonable time and that his inability to participate in his improvement period caused there to be no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. However, the circuit court considered that the mother was currently participating in an improvement period and that it was not necessary to terminate petitioner's parental rights if she were able to improve and properly care for the children. Accordingly, the circuit court terminated petitioner's custodial rights only and noted that if the mother would later fail to improve, "it would be in the best interest of the children that the [circuit] court terminate [petitioner's] parental rights."

The circuit court continued to hold review hearings for the mother throughout 2017 and up until March of 2018. According to the parties, the mother completed a substance abuse rehabilitation program, but relapsed in November of 2017 and became uncooperative with the DHHR. The mother eventually relinquished her parental rights in March of 2018.

Petitioner was released on parole in November of 2017. However, petitioner was charged with a DUI in February of 2018 and incarcerated as a result. Petitioner was still incarcerated when the circuit court held the final dispositional hearing in March of 2018. Petitioner testified that he felt confident that he would be released from incarceration in two weeks, but that he could be held longer. Petitioner's cousin testified that petitioner visited with the children a few times since he was released on parole and that visitation went well when it occurred. Ultimately, the circuit court relied on its prior findings that petitioner was unable to participate in a family case plan since the filing of the petition and found that petitioner was again unable to participate

2

due to his incarceration. Accordingly, the circuit court terminated his parental rights in its April 3, 2018, order. Petitioner now appeals that order.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in denying his motion to require in court testimony from L.B. In support, petitioner argues that the only relevant evidence could be obtained through L.B.'s statement and, therefore he was entitled to have L.B. testify. Additionally, petitioner asserts that, pursuant to West Virginia Code § 62-6B-3(d), the circuit court was required to obtain an expert opinion as to the emotional harm L.B. might have suffered through testifying and that the failure to do so violated his due process rights.[3] However,

---

[2]The mother voluntarily relinquished her parental rights. According to the parties, the permanency plan for the children is adoption in their current relative foster placement. Further, the parents are allowed post-termination visitation at the discretion of the current foster placement.

[3]West Virginia Code § 62-6B-3(d) provides:

In determining whether to allow a child witness to testify through live, closed-circuit television the court shall appoint a psychiatrist or a licensed psychologist with at least five years clinical experience who shall serve as an advisor or friend of the court to provide the court with an expert opinion as to whether, to a reasonable degree of professional certainty, the child witness will suffer severe emotional harm, be unable to testify based solely on being in the physical presence of the defendant while testifying and that the child witness does not evidence signs of being subjected to undue influence or coercion. The opinion of the psychiatrist or licensed psychologist shall be filed with the circuit court at

(continued . . . )

petitioner fails to address Rule 8(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, which provides that "there shall be a rebuttable presumption that the potential psychological harm to the child outweighs the necessity of the child's testimony and the court shall exclude this testimony if the potential psychological harm to the child outweighs the necessity of the child's testimony." On appeal, as in the proceedings below, petitioner makes no effort to argue that the necessity of the child's testimony outweighs the potential psychological harm that the child could suffer. Petitioner asserts no specific evidence that L.B.'s testimony would provide. Additionally, petitioner admitted that L.B. was present for the robbery during his testimony. Further, Rule 8(a) provides that the child's testimony may be excluded if "the equivalent evidence can be procured though other reasonable efforts." The forensic interviewer of the child testified regarding the child's statement and demeanor at the time of her interview and petitioner was afforded an opportunity to cross-examine the interviewer. Therefore, because of the child's statement, the circuit court's found the child's direct testimony was not necessary because it was easily available through the forensic interviewer. Accordingly, we find that the circuit court did not err in denying petitioner's motion to require L.B to testify.

Petitioner also argues that the circuit court erred in denying his motion for an improvement period and subsequently terminating his parental rights. We begin by noting that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period. . . .'" *In re Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

The circuit court did not err in denying petitioner's motion for an improvement period because he could not participate in an improvement period. Petitioner was incarcerated since the outset of the case and unable to meaningfully participate in services with the DHHR. Further, the record contains no evidence that petitioner attempted to begin services with the DHHR once he was released on parole. Petitioner failed to present clear and convincing evidence that he would substantially participate in an improvement period. Therefore, the circuit court did not err in denying his motion for an improvement period.

Additionally, the circuit court did not err in terminating petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that a circuit court may terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the

least thirty days prior to the final hearing on the use of live, closed-circuit television and the defendant shall be allowed to review the opinion and present evidence on the issue by the use of an expert or experts or otherwise.

children. Additionally, West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected exist when the "abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" As mentioned above, petitioner was incarcerated and unable to participate in a case plan. Although petitioner asserted that he attended classes while incarcerated, he continued to exhibit the same behaviors that led to the filing of the petition. For example, despite being under the supervision of parole, petitioner was found to be driving under the influence of alcohol and arrested. Petitioner characterizes this parole violation as a small mistake, but the practical effect was his incarceration and further separation from his children. Finally, we have previously held that

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4. Despite petitioner's assertions that he wanted to remedy the conditions of abuse and neglect, his continuous criminal activity resulted in his incarceration and limited his ability to parent his children. In consideration of this pattern of activity, we find that the circuit court did not err in terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 3, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: October 19, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating.

5